## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| RAUL RODRIGUEZ, JR. </br> Plaintiff, </br> </br> vs. </br> </br> LOUIS DeJOY, POSTMASTER GENERAL, </br> Defendant. | ) </br> ) </br> ) </br> ) </br> ) Case No. CIV-22-618-HE </br> ) </br> ) </br> ) |

### PLAINTIFF'S ORIGINAL COMPLAINT

**A. PARTIES**

1. Plaintiff, Raul Rodriguez, Jr., is an individual who is a citizen of the Cleveland County, State of Oklahoma, and at all relevant times, was employed as a Full-Time Rural Carrier at the Sooner Station in Norman, Oklahoma.

2. Defendant, Louis DeJoy, is the Postmaster General for the U.S. Postal Service and may be served via service upon Robert J. "Bob" Troester, the United States Attorney for the Western District of Oklahoma, and upon The Honorable Merrick Garland, Attorney General of the United States, and upon the Defendant.

**B. JURISDICTION AND VENUE**

3. This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district.

**C. ADMINISTRATIVE PROCEEDINGS**

5. Defendant processed Plaintiff's complaint in accordance with the applicable Equal Employment Opportunity Commission (EEOC) regulations, 29 C.F.R § 1614.103 *et seq.* and conducted an investigation.

6. A copy of the Report on Investigation (ROI) was transmitted to the Plaintiff on April 9, 2021.

7. Plaintiff initially requested a hearing before the EEOC on March 8, 2022, but withdrew that request and the complaint was remanded to the Defendant for issuance of a Final Agency Decision (FAD).

8. The FAD was issued on April 25, 2022, and this complaint is filed within ninety (90) days of that date.

9. Plaintiff has fully complied with all administrative prerequisites before filing this action.

**D. GENERAL ALLEGATIONS**

10. Plaintiff began his employment with Defendant on or about January 25, 2003, as a Rural Carrier Assistant at the Sooner Station in Norman, Oklahoma, and the Main Station.

11. In or around September 2008, Plaintiff became a regular Rural Carrier and assigned to Rural Route 18 from the Sooner Station.

12. Beginning in or around 2020, Plaintiff was subjected to discrimination based upon his race, color and disability, and retaliation as a result of his protected activity.

13. Plaintiff is Hispanic male, color Brown, with a disability as a result of a work-related injury to his dominant hand, which occurred on or about July 23, 2020, where he is unable to bend his finger and has limited ability to grasp items.
14. This injury did not keep Plaintiff from performing the essential functions of his position, other than he could not work as quickly as he had previous to this injury.
15. Plaintiff asked for accommodations to allow him to work at a slower pace.
16. This injury was sustained on the job and his supervisors were aware of his disability.
17. Plaintiff also suffers from "fight or flight" syndrome, of which his supervisors were aware.
18. On or about May 15, 2020, Mr. Rodriguez's route was arbitrarily adjusted by Management Officials (RMOs) Tara Frizzell, White female, and Amber Reimers, White female, which caused it to decrease from a 46K route to a 43K route, resulting in an overall salary decrease of approximately $6,000.
19. The territory removed from Mr. Rodriguez was reassigned to Wendy Sherman, White female, who was also the union steward.
20. This increased Sherman's base salary and she was also allowed to keep her days off, so that she continued to work ten days on and four days off in a two-week period.
21. Another White, female employee, Dragna Sindjic, also was allowed to work ten days on and four days off in a two-week period. In addition, Sindjic was also allowed to work overtime, which Plaintiff was not allowed to do.
22. A route evaluation was not conducted prior to the decrease. Subsequently, a special evaluation was conducted on or about October 1, 2020.

23. Mr. Rodriguez was the only Rural Carrier at the Sooner Station who was Hispanic, and one of the few minorities assigned to a senior position.

24. On or about July 23, 2020, Mr. Rodriguez was physically attacked by a resident, White male, while delivering mail, which caused the injury to his hand.

25. Plaintiff was not provided with medical treatment for his injury and his subsequent stress and anxiety related to the injury.

26. Mr. Rodriguez was directed by management personnel to not file a charge against the resident and to not file a claim for a work-related injury.

27. Gregory Avery, Black male, and Amber Riemers, White female, were the Responsible Management Officials (RMO) who directed Plaintiff to not file a charge against the resident and to not file a workers' compensation claim.

28. Management made no effort to adjust Plaintiff's route so that he would not be in contact with the resident who attacked him.

29. On or about October 1, 2020, a special route count was performed on Mr. Rodriguez's route. Supervisor Amber Reimers, White female, was in charge of counting each piece of mail processed through his route, which took two weeks to complete.

30. After this count, Plaintiff's schedule was altered to increase the number of days he worked, including holidays, in order to maintain his current pay.

31. On information and belief, the only other rural carrier subjected to the same route adjustments and scrutiny to which Plaintiff was subjected was also a minority, Rachid Talibi, male, of Moroccan descent, brown color.

32. Mr. Talibi's route was cut in the same manner as Plaintiff's and his territory was assigned to either Wendy Sherman, White female, or Dragna Sindjic, White female.

33. Non-Hispanic carriers were not subjected to the same scrutiny and did not have their routes adjusted in order to maintain their pay.

34. After this adjustment was made, Amber Reimers, White female, Gregory Avery, Black male, and Travis Swaner, White male, management personnel at the Sooner Station, began monitoring Plaintiff's time, even though they knew that Plaintiff's injury was causing him to work slower.

35. Plaintiff was denied the opportunity to work overtime, even though Management knew that, because of Plaintiff's injury, he was struggling to keep up.

36. On or about October 20, 2020 Plaintiff initiated an informal EEO complaint.

37. On or about October 27, 2020, Plaintiff, as well as the other Carriers, were directed to provide management any misrouted political mail. Plaintiff followed this instruction but was verbally abused in front of the other employees; Management was aware of Plaintiff's mental disability, and this interaction exacerbated his disability and was unwelcome and caused him embarrassment.

38. This interaction took place after Acting Station Manager Travis Swaner became aware that Plaintiff had filed an informal EEO Complaint.

39. Plaintiff requested a day of sick leave as a result of this interaction, which was denied by Acting Station Manager Travis Swaner, White male. RMO Swaner threatened Plaintiff by telling him that if he ever attempted to take sick leave for stress again, he would charge Plaintiff with insubordination and failing to perform work duties.

40. RMO Swaner then took Plaintiff into his office along with witnesses and accused Plaintiff of aggressive behavior. After one of the witnesses pointed out that Swaner was the one who was aggressive, Swaner abruptly ended the meeting.
41. On or about December 20, 2020, Plaintiff and Management personnel participated in a mediation. Even though USPS policy is that any EEO activity can be conducted during work time, Plaintiff was not allowed to do so. He participated in a mediation as part of his informal EEO complaint, but was required to do this on his day off in spite of allowance to participate in REDRESS while on the clock.
42. On or about December 21, 2020, Plaintiff attempted to ask for a vacation day for December 26, 2020. As he was filling out the request, his supervisor Amber Reimers, White female, told him not to bother because it would be denied.
43. Plaintiff continued filling out the request and submitted it pursuant to USPS policy, and Reimers. Reimers reacted with an aggressive attitude and Plaintiff reacted in kind, as a result of his "flight or fight" disability.
44. Plaintiff is aware that cursing in the workplace is a usual occurrence and that others have not been disciplined because of it.
45. Reimers began cursing at Plaintiff in the open area where other employees could hear, which was unwelcome and exacerbated his disability, causing him extreme stress.
46. Plaintiff was told to leave the facility and was suspended by RMO Swaner.
47. He was told he "balled up his fists," which was impossible for him to do because of his injury.

48. Plaintiff was not officially notified of his suspension until January 14, 2021, even though the letter was dated December 21, 2020.
49. This action was taken approximately ten (10) days after Swaner and Plaintiff participated in REDRESS.
50. Even though disciplinary actions are supposed to be confidential, on information and belief, management discussed Plaintiff and his discipline with family members and discussed Plaintiff's mental health information with people who had no need to know.
51. Plaintiff was diagnosed with "fight or flight" syndrome.
52. Plaintiff received a notice of proposed removal dated January 7, 2021.[1]
53. Since his injury and filing his EEO Complaint, Plaintiff has been subjected to a hostile work environment and retaliated against for protected activity.
54. Defendant's management personnel were aware of the stress and did nothing to assist Plaintiff, including telling him not to file a workers' compensation claim.
55. Plaintiff had been employed for over seventeen years with no issues until he was injured on the job and filed an EEO complaint.
56. Other non-Hispanic, non-brown employees, non-male employees were treated better than Plaintiff, being allowed their preferred schedules and being given Plaintiff's routes.

**COUNT I – VIOATION OF TITLE VII, 42 U.S.C, § 2000e, *et seq.***

---

[1] Plaintiff and RMO subsequently agreed to allow Plaintiff to resign.

57. Plaintiff incorporates by reference the allegations in the preceding paragraphs as if fully set forth herein.

58. During the course of Plaintiff's employment, Defendant's representatives, acting within the scope and course of their employment, engaged in a pattern and practice of intentional discrimination and bullying amounting to harassment against Plaintiff based upon his race, gender, color, and national origin in violation of Title VII, 42 U.S.C. § 2000e, including when they reassigned his territory to a White female with no route evaluation; told Plaintiff that he could not file a workers' compensation claim as a result of being assaulted by a customer; changed his schedule resulting in requiring extra hours in order to maintain his pay; told that he would be reprimanded if he asked for leave related to stress caused by the harassment; being berated by management in group area in front of other employees.

59. The Defendant's treatment of Plaintiff based upon his race, gender, national origin and color had the purpose and effect of unreasonably interfering with Plaintiff's work performance thereby creating an intimidating, hostile and offensive work environment.

60. The conduct described herein would have offended a reasonable person of the same gender, race, national origin and color in Plaintiff's position.

61. Management level employees knew, or should have known, of the bullying, harassment and discrimination described herein, but failed to take appropriate remedial action, and in so doing, perpetuated the existence of a severe, pervasive and hostile work environment.

62. Defendant, through its agents and employees, engaged in these discriminatory practices with malice or reckless indifference to Plaintiff's federally protected rights.

63. As a direct and proximate cause of the action and conduct set forth herein, Plaintiff has suffered, and is now suffering and will continue to suffer damages, including lost wages and benefits, mental and emotional distress, and inconvenience.

64. Plaintiff seeks an award of back pay, including lost fringe benefits, bonuses, costs of living increases and other benefits including interest; for reinstatement, or in lieu of reinstatement, an award of front pay in a reasonable amount; for an award of compensatory and punitive damages; and for attorney's fees and costs, and for such other and further relief the Court deems just and proper.

### COUNT II – DISABILITY DISCRIMINATIO IN VIOLATION OF THE REHABILITATION ACT OF 1973 (29 U.S.C. § 791)

65. Plaintiff incorporates by reference the allegations in the preceding paragraphs as if fully set forth herein.

66. Plaintiff is a person with a disability, as he has nerve damage to his hand which prevents him from fully utilizing his hand and has been diagnosed with "fight or flight" syndrome.

67. As described in the Facts above, Plaintiff's disabilities substantially limit major life activities, in that he cannot fully use his hand and fight or flight syndrome exacerbates his symptoms in stressful situations.

68. Plaintiff's disabilities are known to the Defendant or perceives Plaintiff has these disabilities.

69. As a direct and proximate cause of the action and conduct set forth herein, Plaintiff has suffered, and is now suffering and will continue to suffer damages, including lost wages and benefits, mental and emotional distress, and inconvenience.

70. Plaintiff seeks an award of back pay, including lost fringe benefits, bonuses, costs of living increases and other benefits including interest; for reinstatement, or in lieu of reinstatement, an award of front pay in a reasonable amount; for an award of compensatory and punitive damages; and for attorney's fees and costs, and for such other and further relief the Court deems just and proper.

## COUNT III – RETALIATION

71. Plaintiff incorporates by reference the allegations in the preceding paragraphs as if fully set forth herein.

72. Both Title VII and the Rehabilitation Act proscribe Defendant from retaliating against Plaintiff for participating in protected rights under these statutes.

73. By reason of Plaintiff's complaints, Defendant retaliated against Plaintiff after he participated in protected activity by filing an EEO complaint.

74. Defendant's retaliation against Plaintiff was committed with malice or reckless disregard of his federally protected rights.

75. Defendant's retaliatory actions against Plaintiff cause him to suffer emotional distress, inconvenience, and loss of enjoyment of life.

76. As a direct and proximate cause of the action and conduct set forth herein, Plaintiff has suffered, and is now suffering and will continue to suffer damages, including lost wages and benefits, mental and emotional distress, and inconvenience.

77. Plaintiff seeks an award of back pay, including lost fringe benefits, bonuses, costs of living increases and other benefits including interest; for reinstatement, or in lieu of reinstatement, an award of front pay in a reasonable amount; for an award of compensatory and punitive damages; and for attorney's fees and costs, and for such other and further relief the Court deems just and proper.

WHEREFORE, Plaintiff prays for an award of damages against Defendant in an amount to be determined by a jury, together with interest and costs of suit, attorney fees, and for such other relief as is just and proper.

**JURY DEMAND**

Plaintiff requests a trial by jury on all claims enumerated in this Complaint.

Respectfully submitted,

*s/ Patricia A. Podolec*
Patricia A. Podolec, OBA # 21325
10601 S. Western, Suite 119
Oklahoma City, OK 73170
Phone: 405-703-4431
Cell: 405-760-3358
Fax: 405-400-8784
ppodolec@podoleclaw.com